IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

STOUT LIVING TRUST,                    )
                                       )
           Plaintiff,                  )    TC-MD 110314
                                       )
     v.                                )
                                       )
LANE COUNTY ASSESSOR,                  )
                                       )
           Defendant.                  )    **DECISION**

       Plaintiff appeals the exception real market value of property identified as Account

0889590 (subject property) for the 2010-11 tax year.  A trial was held by telephone on

October 25, 2011.  David E. Carmichael, Attorney at Law, appeared on behalf of Plaintiff.  Doug

Stout (Stout) testified on behalf of Plaintiff.  Bryce Krehbiel (Krehbiel), Residential Appraiser,

appeared and testified on behalf of Defendant.  Plaintiff's Exhibit 1 was received without

objection.  Defendant's Exhibits A through AA were offered and received without objection.

## I.  STATEMENT OF FACTS

       Krebhiel testified that the subject property is a 1,253 square-foot Craftsman-style

bungalow built in 1910.  (*See* Def's Exs A at 2, D.)  He testified that the previous owners

purchased the subject property for $190,000 in May 2006 through a foreclosure; the 2006-07 real

market value was approximately $227,000.  (*See* Def's Ex A at 1.)  Stout testified that Plaintiff

purchased the subject property on December 3, 2008.  (*See id*.)  He testified that the previous

owners of the subject property had many animals including puppies; as a result, dog feces

covered the floor.  Stout testified that he did not consider the subject property to be habitable at

the time of his purchase in December 2008.  Krehbiel testified that, in 2008, the board of

property tax appeals reduced the improvements' real market value of the subject property from

approximately $125,000 to $32,340 due to its poor condition. (*See* Def's Ex B.) He testified that the total real market value was reduced to $150,000, but maximum assessed value and assessed value were not reduced. Krehbiel testified that the subject property was inspected by one of Defendant's appraisers on January 27, 2009, and October 20, 2009.[1] He testified that once the subject property condition was improved, the 2008 adjudicated value was removed in 2010; the improvements' real market value increased to $99,560 for a total real market value of $200,272. (Def's Exs A at 1, B.)

Stout testified that after purchasing the subject property, he and his wife scrubbed the floors and walls, installed new sheet rock, and replaced plaster, a window, and a sliding glass door. Stout testified that he estimated the value of "work that we did oursel[ves] if contracted" to have been $3,000. (Ptf's Ex 1 at 1.) Stout testified that his estimate included the cost of materials, such as $370 for the sliding glass door, $110 for the window, and less than $20 for three sheets of sheet rock. He testified that he estimated $2,500 for the labor value; he could not recall the specific hours that he and his wife worked, but estimated the total time to be not more than 25 hours.

Stout testified that when Plaintiff bought the subject property, the only heat source was a wood stove; he spent $4,800 for work completed by USA Heating at the end of 2008 including installation of an electric furnace and heat ducts. (*See* Ptf's Ex 1 at 1.[2]) Stout testified that he spent $3,062 for work completed by Plumb Crazy Plumbing, Inc., including new "tubing," relocation of a bathtub, and replacement of a toilet and sink. (*See* Ptf's Ex 1 at 1-3 (four invoices; three are dated "1/22/09" and one is dated "Oct 7 09").) Stout testified that he paid

---

[1] Krehbiel testified that he did not inspect the subject property; the inspection was reportedly completed by appraiser "163." (Def's Ex A at 1.) Krehbiel testified that he does not know the identity of appraiser "163" or whether an interior inspection was conducted.

[2] Stout testified that he could not find the USA Heating receipt, but confirmed the $4,800 price.

$7,816 to Kerns Cabinets & Const. Inc. for kitchen and bathroom cabinets. (*See* Ptf's Ex 1 at 1, 4 (two invoices; one is dated "3-18-09" and the other contains no indicia of date).) He testified that the original bathroom cabinets were worn, but he could have "gotten by" with the original kitchen cabinets. Stout testified that he spent $2,316 for work completed by K&S Electric & Consultants, Inc., to strip wire, replace electrical outlets, and install lights on a back porch used as a laundry room. (*See* Ptf's Ex 1 at 1, 5-6 (invoices dated "2-2-2009" and "6-1-2009").)

Stout testified that the wood floor was in pretty good shape except for some "wormholes" and some pieces of the floor that were missing where an oil tank had been removed. He testified that the floor had a terrible odor as a result of the dog feces left by the previous owner. Stout testified that the floors were patched, sanded, refinished, and re-stained. Stout testified that the original kitchen and bathroom floors were 12 by 12 inch black and white tiles from the 1950s; some were missing and all were in bad shape. He testified that he had new linoleum installed in the kitchen. Stout paid $945.21 to Rogers & Son and $3,000 to Colin Murphy Hardwood Floors for the flooring work. (*See* Ptf's Ex 1 at 1, 7 (invoices dated "2-3-09" and "3-13-09").)

Stout originally reported total costs associated with "capital improvements" to be $24,939. (Ptf's Ex 1 at 1.) He testified that the value of cleaning and paint are not included in list of "capital improvements" because those constitute maintenance. (*See id.*) At trial, he testified that he considered the plumbing and floor work to be ordinary maintenance that had been deferred. Based on that conclusion, and the fact that the heating work was completed in 2008, Stout revised his total new construction cost to $13,132. Stout testified that the subject property is not his residence; it was previously rented, but is not currently rented. He testified that, after completing the repairs, he listed the subject property for sale in January 2010.

Krehbiel testified that Defendant does not dispute the actual cash and labor expended by

Stout and his wife; Defendant's position is that the value of the subject property was increased by $65,000 and that is the measure of exception value. Krehbiel testified that he agrees that painting constitutes general ongoing maintenance and repair; refinishing the floors may also fall within that category. He testified, however, that the changes taken en masse are more akin to a "renovation" or "rehabilitation" as defined in OAR 150-308.149(A) and the change in value as a result exceeds $25,000. Krehbiel testified that exception value of $63,950 was determined by Defendant for the 2010-11 tax year. He testified that the exception value is based on "ProVal" and "Marshall and Swift," but he did not independently verify the exception value or provide any evidence concerning those determinations. Krehbiel testified that the exception value of $63,950 is also supported by the 2010 listing. He testified that, prior to Plaintiff's purchase of the subject property, it was listed for $149,900 with the description "[b]ring your hammer and nails, this is a true fixer." (Def's Ex S.) Plaintiff purchased it for $105,000. (*See* Def's Ex A at 1.) Krehbiel testified that, as of January 8, 2010, the subject property was listed for $275,900 and described as a "home with just about everything new." (Def's Exs T, U.)

In its Complaint, filed April 7, 2011, Plaintiff requested a 2010-11 real market value of "no more than $160,000" and an exception value of "no more than $30,000." (Ptf's Compl at 1.) Prior to trial, Plaintiff withdrew its appeal of real market value and revised its requested exception value to $18,000. (Ptf's Ltr, Oct 17, 2011.) At trial, Plaintiff revised its requested 2010-11 exception value to $13,132. Defendant requests that the 2010-11 exception value of $63,950 be sustained. (Def's Answer at 1.)

## II. ANALYSIS

The issue before the court is the exception value of the subject property for the 2010-11 tax year. The value of new property and new improvements is commonly referred to as

"exception value." Exception value "is a term used to identify certain changes to property for the current tax year that result in additions to both [real market value] and [maximum assessed value], and an *exception* to the typical constitutional and statutory cap of three percent on annual increases to [maximum assessed value]." *Banducci v. Douglas County Assessor*, TC-MD No 090069C, WL 3706451 at *1 n 4 (Sept. 23, 2010) (internal citations omitted) (emphasis in original).

Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427.[3] A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [its] burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

"New property or new improvements" is defined as "changes in the value of property as the result of: (A) New construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property[.]" ORS 308.149(5)(a). " 'New property or new improvements' does not include changes in the value of the property as the result of: (A) General ongoing maintenance and repair; or (B) Minor construction." ORS 308.149(5)(b). " '[G]eneral ongoing maintenance and repair' means an activity that:

> "(A) Preserves the condition of existing improvements without significantly changing design or materials and achieves an average useful life that is typical of the type and quality so the property continues to perform and function efficiently;
>
> "(B) Does not create new structures, additions to existing real property

---

[3] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

improvements or replacement of real or personal property machinery and equipment;

"(C) Does not affect a sufficient portion of the improvements to qualify as new construction, reconstruction, major additions, remodeling, renovation or rehabilitation; and

"(D) For income producing properties is part of a regularly scheduled maintenance program."

OAR 150-308.149-(A)(2)(a). "Regardless of cost, the value of general ongoing maintenance and repairs may not be included as additions for the calculation of maximum assessed value." OAR 150-308.149-(A)(2)(b). "Minor construction" is "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(6). "Minor construction does not include general ongoing maintenance and repairs." OAR 150-308.149(6)(2).

In *Hoxie v. Dept. of Rev.*, this court stated that, in determining exception value, "the court must exclude increases in [real market value] due to cleaning, maintenance and repairs, or minor construction. Likewise, the court cannot consider increases in [real market value] due to inflation, changes in market demand, or changes in management or use of the property." 15 OTR 322, 326 (2001). In *Sharps v. Benton County Assessor* (*Sharps*), the court was presented with the issue of exception value for a property that, like the subject property in this case, required extensive cleaning and repairs:

"The house was full of garbage and mice lived in the walls. [The taxpayer] began cleaning the property before the transaction closed by removing truckloads of garbage and other debris from inside the home. * * * In the kitchen [the taxpayers] removed the cabinets to clean out dead mice and mice feces and repair the walls that were eaten by the mice."

TC-MD No 000515C at 1 (Jun 7, 2001). The court determined that "the clean-up (especially the garbage/trash removal) and painting done inside and out * * * [could not] be included in

calculating maximum assessed value additions," despites its likely "effect of increasing the overall value." *Id.* at 5 (citations omitted). The taxpayers in *Sharps* also completed "extensive" work including "a new roof, repairs to the sheet rock/drywall, a remodeled bathroom and a partially remodeled kitchen. [The taxpayers] also tiled the entry and replaced at least some of the carpet. This work falls into the category of rehabilitation, remodeling and renovation[.]" *Id.* (citations omitted).

"The value of new property or new improvements shall equal the real market value of the new property or new improvements reduced (but not below zero) by the real market value of retirements from the property tax account." ORS 308.153(2)(a). Real market value is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). "The cost approach is 'particularly useful in valuing new or nearly new improvements[.]'" *Magno v. Dept. of Rev.*, 19 OTR 51, 55 (2006) (internal citations omitted).

Krehbiel testified that the 2008-09 improvements' real market value of the subject property was reduced by approximately $92,660 based on the deplorable condition of the subject property. The 2008-09 maximum assessed value remained unchanged. Defendant determined exception value of $63,950 for the 2010-11 year, in conjunction with an increase in the improvements' real market value from $30,500 for the 2009-10 tax year to $99,560 for the 2010-11 tax year. Krebhiel testified that the exception value was determined based on "ProVal"

and "Marshall & Swift"; however, he testified that he did not verify those calculations or inspect the subject property. The court did not receive any evidence clearly identifying how the 2010-11 exception value of $63,950 was determined or whether it included new improvements to the subject property properly added to the 2010-11 maximum assessed value. The court finds that the 2010-11 exception value of $63,950 is not supported by the evidence presented.

Plaintiff presented evidence of the cost of improvements including invoices to support Stout's testimony. In 2009, Plaintiff's remodel costs totaled $20,139.[4] Stout testified that Plaintiff spent $4,800 for installation of an electric furnace and heat ducts in late 2008, but did not have a copy of the invoice or receipt for the heating work. Including the reported cost of $4,800 for heating work, new improvements to the subject property totaled $24,939 in cost.[5] In addition, Stout testified that he and his wife spent many hours cleaning the subject property as a result of the deplorable condition at the time of Plaintiff's purchase, though he did not provide any evidence concerning the value of that work. The value of cleaning, maintenance, and repairs constitutes "general ongoing maintenance and repair" and cannot be included as exception value. Plaintiff's actual costs are persuasive evidence of the value in this case and the court finds that the 2010-11 exception real market value was $25,000.

/ / /

/ / /

/ / /

/ / /

---

[4] At trial, Plaintiff excluded as repairs the $3,062 paid to Plumb Crazy Plumbing, Inc. for work including new "tubing," relocation of a bathtub, and replacement of a toilet and sink and the $3,945.21 spent for work on the floors. It is not clear to the court that the excluded work constituted maintenance and repairs rather than new improvements, so the value is included as exception value for the 2010-11 tax year.

[5] The value of work that occurred in 2008 constitutes "minor construction" unless the total value real market value of "cumulative additions made over five assessment years" exceeds $25,000. ORS 308.149(6).

## III. CONCLUSION

After carefully considering the testimony and evidence, the court finds that the 2010-11 exception value of the subject property was $25,000. Now, therefore,

IT IS THE DECISION OF THIS COURT that the exception real market value of property identified as Account 0889590 was $25,000 for the 2010-11 tax year

Dated this ____ day of January 2012.

_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on January 18, 2012. The Court filed and entered this document on January 18, 2012.*